UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES A. VANCE,

        Petitioner,

v.                                       CASE NO. 05-CV-40131-FL
                                        HONORABLE PAUL V. GADOLA

MILLICENT WARREN,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

**I.    Introduction**

James A. Vance ("Petitioner"), a state prisoner currently confined at the Thumb Correctional Facility in Lapeer, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of third-degree criminal sexual conduct following a jury trial in the Oakland County Circuit Court and was sentenced as a fourth habitual offender to 14 to 21 years imprisonment in 2002. In his pleadings, Petitioner raises claims concerning the jury's ability to hear the victim's testimony/judicial misconduct, prosecutorial misconduct, and the waiver of his right to testify at trial. Respondent Millicent Warren is the warden at the Thumb Correctional Facility. For the reasons stated below, the petition for a writ of habeas corpus is denied.

**II.    Facts and Procedural History**

Petitioner's conviction arises from his sexual assault upon Leeann Robiadek ("Leeann"), a 13-year-old friend of his daughter, on August 6, 2001 in Oakland County, Michigan. At trial, Leeann testified that she went to a "98 Degrees" concert at a local music venue called "Pine Knob"

with her friend Heather Vance, Heather's little sister Ashley Vance, Heather's cousin, Rhys Vance, and Petitioner. They parked next to a motor home owned by Petitioner's friend, Steve Protiva, and socialized in the parking lot before the concert.

After the concern, Leeann testified that they waited for traffic to clear for 30 to 45 minutes. Petitioner drank alcohol during this time, but Leeann did not. When they left Pine Knob, Petitioner drove Heather and Ashley to their mother's home, drove Rhys home, and then drove Leeann to a secluded, vacant lot near the Pontiac Silverdome instead of taking her home. Petitioner climbed on top of her. When Leeann screamed, Petitioner put his hand over her mouth and told her that if she stopped screaming he would take her home sooner. Leeann stopped screaming. Petitioner removed his shorts, put Leeann's seat into a reclining position, removed her pants and underwear, and penetrated her with his penis, causing her to bleed. He pulled up his pants while she pulled up her own. Petitioner said he could not believe what he had done and told Leeann not to tell anyone. Petitioner then drove her home.

Leeann got home after midnight and went to bed. She did not tell anyone about the assault at that time. She had blood on her jeans and underwear, which she washed. A week or so later, she told her friend Amanda that she had been raped, but did not provide details. Amanda guessed that Petitioner was the perpetrator and told Heather. Heather told another friend named Josh. Leeann testified that she could not tell her mother about what had happened face-to-face, so she wrote her a note. The note was admitted into evidence at trial.

The record indicates that the trial court and defense counsel had difficulty hearing portions of Leeann's testimony. The trial court repeatedly instructed Leeann to speak more loudly during her testimony and occasionally reiterated her testimony to verify what was said. The trial court also sat in the gallery for a time to ensure that the parties and jury could hear Leeann's testimony.

2

Defense counsel did not object to these procedures.

Dianna Robiadek, Leeann's mother, testified that she noticed a change in Leeann's behavior after the concert. Leeann stopped seeing her friends and slept a lot. After reading Leeann's note, Ms. Robiadek was upset and reported the incident to the police. Leeann was upset and crying when she gave her statement to the police. Ms. Robiadek also took Leeann for a medical examination.

Dr. Steven Kristal examined Leeann at the Henry Ford Hospital in West Bloomfield. Leeann reported that her vagina had been penetrated and her neck had been twisted. A pelvic examination revealed that Leeann's hymen was not intact. Dr. Kristal testified that this usually signifies penetration and was consistent with being sexually assaulted.

Heather Vance and Rhys Vance both testified at trial. They discussed attending the concert with Leeann and Petitioner on the night in question. Heather also recalled her conversation with Leeann when Leeann told her that Petitioner had sexually assaulted her.

Robert Blickensdorf, an investigator for the Oakland County Prosecutor's Office, also testified about his investigation of the incident.

The defense called two witnesses at trial. Steve Protiva testified that he had known Petitioner for 15 to 20 years and recalled attending the concert on August 6, 2001. He testified that Petitioner did not drink alcohol that night. He also said that Petitioner had planned to stop by his house after the concert, but did not do so. Virginia Padilla, Heather's and Ashley's mother, testified that she and Petitioner had lived together in the past, but were never married. She recalled that her daughters went to the concert with Petitioner on August 6, 2001 and arrived home at 11:35 p.m. Ms. Padilla testified that Leeann's mother told her that Leeann got home at 11:55 p.m. Ms. Padilla admitted that Petitioner paid her child support and that she would not receive it if Petitioner were incarcerated.

3

Petitioner did not testify at trial, and did not indicate any desire to do so on the record at the time of trial.

At the close of trial, the jury convicted Petitioner of third-degree criminal sexual conduct. The trial court subsequently sentenced him as a fourth habitual offender to 14 to 21 years imprisonment.

Following his conviction and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting the following claims:

> I. He was denied due process where the factfinder could not clearly hear the testimony of the complaining witness and where the complaining witness's testimony was repeatedly buttressed by the trial court's repetition of her testimony.
>
> II. He was denied due process where the prosecutor presented improper argument to the jury and either the trial court failed to properly instruct the jury or defense counsel failed to raise proper objections.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Vance*, No. 241081, 2003 WL 22339848 (Mich. Ct. App. Oct. 14, 2003) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, raising identical claims raised with the Michigan Court of Appeals plus the following claim:

> III. He was denied due process of law when his right to testify truthfully in his own behalf was waived by his attorney without his knowledge or approval.

The Michigan Supreme Court denied leave to appeal. *People v. Vance*, 470 Mich. 858, 680 N.W.2d 419 (2004).

Petitioner thereafter filed the present habeas petition raising the same three claims presented to the Michigan Supreme Court. Respondent has filed an answer to the petition asserting that it should be dismissed on exhaustion grounds and, alternatively, that it should be denied because the claims are procedurally defaulted and/or lack merit.

### III.     Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.' " *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or

5

erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, this Court presumes the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.     Analysis**

   A.     Exhaustion

As an initial matter, Respondent contends that the petition should be dismissed because Petitioner has failed to properly exhaust his state court remedies as to his third habeas claim. The doctrine of exhaustion of state remedies requires state prisoners to present their claims to the state courts before raising their claims in a federal habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A) and § 2254(c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The exhaustion

requirement is satisfied if a prisoner invokes one complete round of the State's established appellate review process. *O'Sullivan*, 526 U.S. at 845. This means that state prisoners in Michigan must present their habeas claims to the Michigan Court of Appeals and the Michigan Supreme Court before raising them in a federal habeas petition. *See Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Petitioner did not present his third habeas claim concerning the waiver of his right to testify to the Michigan Court of Appeals; he first raised the claim before the Michigan Supreme Court. Consequently, his third habeas claim is unexhausted for purposes of federal habeas review. *See O'Sullivan*, 526 U.S. at 845; *Castille v. Peoples*, 489 U.S. 346, 350-51 (1989) (petitioner does not "fairly present" a claim to the state courts when he only raises the claim before a court which grants review for "special and important" reasons). Even though Petitioner's third habeas claim is unexhausted, however, his claims lack merit such that the interests of comity and federalism are better served by addressing Petitioner's claims rather than dismissing the petition for failure to exhaust state remedies. *See Lyons v. Stovall*, 188 F.3d 327, 333 (6th Cir.1999); *see also* 28 U.S.C. § 2254(b)(2) (authorizing courts to deny a habeas petition on its merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). The Court will therefore proceed to address Petitioner's claims.

      B.      <u>Inaudible Testimony/Judicial Misconduct Claim</u>

Petitioner first asserts that he is entitled to habeas relief because the victim's testimony was inaudible and the trial court bolstered her testimony by repeating it. Respondent contends that this claim is barred by procedural default and/or lacks merit.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72,

85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *Wainwright*, 433 U.S. at 85; *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id*.

Here, the Michigan Court of Appeals rendered the last reasoned opinion on this issue. In dismissing this claim, the court relied upon Petitioner's failure to object at trial. *Vance*, 2003 WL 22339848 at *1. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural

default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied this claim based upon a procedural default – his failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner fails to establish cause to excuse this procedural default. A federal habeas court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court notes that Petitioner cannot establish prejudice as this claim lacks merit. As noted by the Michigan Court of Appeals, the record does not support Petitioner's claim that the victim's testimony was inaudible, or that he was prejudiced thereby. The trial court went to great lengths to ensure that the jury and the parties could hear the victim's testimony by asking her to speak louder and by repeating or having the victim repeat any soft-spoken testimony. The court also allowed the jury to listen to a recording of the victim's testimony during deliberations. There is no indication that defense counsel or the jury was unable to hear relevant testimony.

Additionally, to the extent that Petitioner asserts that the judge's actions in repeating the victim's testimony pierced the veil of judicial impartiality, his claim also lacks merit. The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). Judicial misconduct claims involve two types of cases.

One group addresses charges of "judicial bias" stemming from a trial judge's "personal interest" in the outcome of a case, usually derived from some extrajudicial association with the cause or with one of the parties. *See In re Murchison*, 349 U.S. 133, 136 (1955). The second group concerns charges of "judicial misconduct" in which the trial judge is accused of conducting the proceedings in a manner which strongly suggests to the jury that the judge disbelieves the defendant's case or otherwise favors the prosecution. *See Liteky v. United States*, 510 U.S. 540, 555-56 (1994); *see also Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002), *cert. den.* 124 S. Ct. 99 (2003). To violate a defendant's right to a fair trial, a trial judge's intervention in the trial must be significant and must be adverse to the defendant to a substantial degree. *See McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985); *see also Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995) (state trial judge's behavior must render the trial fundamentally unfair to warrant habeas relief).

As noted by the Michigan Court of Appeals in reviewing this claim for plain error, the trial court's actions in repeating some of the victim's testimony did not show partiality or render the trial fundamentally unfair. The trial court merely repeated some of the victim's statements to ensure that the parties and the jury heard the testimony. The court did not restate the testimony or comment on it. Further, the trial court instructed the jury that its comments were not evidence and should not influence the jury. Petitioner has thus failed to establish that the trial court acted improperly or that he was prejudiced by the court's actions.

Petitioner has also not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires

petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. This claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

    C.    <u>Prosecutorial Misconduct Claim</u>

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by presenting improper argument to the jury, and either the trial court failed to properly instruct the jury or defense counsel failed to properly object. Respondent contends that these claims are barred by procedural default and/or lack merit.

Petitioner first alleges that the prosecutor engaged in misconduct by arguing facts not in evidence. The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor's remarks or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002). First, the court must determine whether the challenged statements were indeed improper. *Id.* at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3)

whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.' " *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

In this case, the Michigan Court of Appeals agreed that the prosecutor, during closing arguments, argued a fact not in evidence. However, the Michigan Court of Appeals denied relief on this issue because the trial court sustained defense counsel's objection and instructed the jury that counsel's comments were not evidence. *See Vance*, 2003 WL 22339848 at *2.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. The record indicates that the trial court sustained the defense objection to the prosecutor's improper argument and issued a curative instruction to the jury. Under such circumstances, Petitioner cannot establish that his trial was rendered fundamentally unfair by the prosecution's argument.

Petitioner also alleges that the prosecutor engaged in misconduct by shifting the burden of proof in stating that Petitioner failed to present evidence regarding the time at which he arrived home on the night of the incident. As noted, habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright*, 433 U.S. at 85. Here, the Michigan Court of Appeals rendered the last reasoned opinion on this claim and relied upon Petitioner's failure to object to the prosecutor's argument at trial in dismissing this claim. *Vance*, 2003 WL 22339848 at *2. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state

law ground for refusing to review trial errors and the state court sufficiently relied upon the default despite reviewing the claim for plain error. *See* discussion *supra.*

Petitioner asserts ineffective assistance of counsel as cause to excuse his default. Petitioner, however, cannot establish cause or prejudice to excuse his default as his prosecutorial misconduct claim lacks merit. As noted by the Michigan Court of Appeals, the prosecution's argument was proper because Petitioner could have produced his mother to testify about when he arrived home on the night of the incident. Further, even if the prosecution's argument was improper, it was not so flagrant as to deprive Petitioner of a fair trial. *See Macias*, 291 F.3d at 452. The remark was relatively isolated, was not intended to mislead the jury, and was not particularly material, and the victim's testimony provided significant evidence of guilt. Moreover, any prejudice to Petitioner was alleviated given that the trial court instructed the jury that the prosecution retained the burden of proof, that the prosecution had to prove each element of the crime beyond a reasonable doubt, and that Petitioner was not required to present evidence in his defense. Consequently, Petitioner has not shown that the prosecution's argument was improper or that it denied him a fundamentally fair trial. Petitioner has also not established that a miscarriage of justice has occurred. *See* discussion *supra*. This claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

Further, given this Court's determination that Petitioner's prosecutorial misconduct claims lack merit, Petitioner cannot establish that the trial court erred in failing to instruct the jury or that defense counsel was ineffective as to such matters. Habeas relief is not warranted.

D.      Waiver of Right to Testify Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because his right to testify at trial was waived by his attorney without his knowledge or approval. Respondent contends that this

13

claim lacks merit.

It is well-established that a criminal defendant has a constitutional right to testify in his own behalf. *See Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987); *Neuman v. Rivers*, 125 F.3d 315, 318 (6th Cir. 1997). The right to testify is personal to the defendant and may be relinquished only by the defendant. Defense counsel's role is to advise the defendant whether to take the stand, but it is for the defendant, ultimately, to decide. *See United States v. Webber*, 208 F.3d 545, 550-51 (6th Cir. 2000). A defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *Id*. at 551.

Petitioner did not testify nor notify the trial court of his desire to testify at the time of trial. Accordingly, waiver of the right to testify is presumed. Petitioner has not rebutted this presumption. A " 'barebones assertion by a defendant, [even one] made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary . . . to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.' " *McCoy v. Bock*, 2003 WL 22994984, *11 (E.D. Mich. Dec. 17, 2003) (Lawson, J.) (quoting *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991), and citing *Chang v. United States*, 250 F.3d 79, 84-85 (2nd Cir. 2001); *Sciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987)).

Petitioner acknowledges that he was aware of his right to testify, but states that defense counsel advised him not to do so. Petitioner has not shown that counsel was deficient for failing

14

to call him to testify or that he was prejudiced thereby. *See Strickland v. Washington,* 466 U.S. 668, 687-94 (1984). He has not indicated what his testimony would have been or how it would have affected the outcome at trial. He has thus not shown that counsel erred or that he was prejudiced by counsel's failure to call him to testify at trial. *See Dell v. Straub*, 194 F. Supp. 2d 629, 653 (E.D. Mich. 2002) (Friedman, J.); *accord Foster v. Delo*, 39 F.3d 873, 877 (8th Cir. 1994). Consequently, habeas relief is not warranted on this claim.

### V.     Conclusion

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

**ACCORDINGLY, IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that, if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a **MOTION** for a COA with this Court within **TWENTY-ONE (21) DAYS** of filing a notice of appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002) (**"We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA."** (emphasis added)). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **FOURTEEN (14) DAYS** of service of Petitioner's motion for a COA.

SO ORDERED.

Dated:   August 7, 2006                              s/Paul V. Gadola
                                                     HONORABLE PAUL V. GADOLA
                                                     UNITED STATES DISTRICT JUDGE

15

Certificate of Service

I hereby certify that on   August 7, 2006  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
                                                          Raina I. Korbakis                              , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                    James Vance                  .


                                                          s/Ruth A. Brissaud
                                                          Ruth A. Brissaud, Case Manager
                                                          (810) 341-7845